HONORABLE RICHARD A. JONES

1

2

3

4

5

6

7                UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
8                      AT SEATTLE

9    ELIZABETH REHN,                    Case No.  3:23-cv-01609-RAJ

10                                      ORDER
                        Plaintiff,
11
                vs.
12
     CITY OF SEATTLE, lawful
13   municipal corporation in the State of
     Washington; RILEY CAULFIELD;
14   YOUNGHUN KIM; SETH
     WAGNER; JOHN DUUS; AND
15   JASON DRUMMOND,

16                      Defendants.

17

18              **I.      INTRODUCTION**

19         This matter comes before the Court on Defendants' Motion for Summary

20   Judgment, Dkt. # 37, and Defendants' Motion to Exclude the Opinion of Sue Peters, Dkt.

21   # 41.  Plaintiff opposes both motions.  Dkts. # 44, 46.  The Court has reviewed the

22   motions, the submissions in support of and in opposition to the motions, the balance of

23   the record, and the governing law.  The parties request oral argument, but the Court finds

24   that oral argument is not necessary to resolve the pending motions.  For the reasons set

25   forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion

26

1    for Summary Judgment and **GRANTS** Defendants' Motion to Exclude the Opinion of

2    Sue Peters.

3                              **II.    BACKGROUND**

4    **A. Factual Background**

5        This case arises from four police officers' mistaken entry into Plaintiff's

6    apartment.  On November 22, 2020, at approximately 1:29 p.m., a man called 911

7    reporting that he was in crisis, intoxicated on methamphetamine and marijuana, and had

8    felt suicidal the previous night.  Dkt. # 38-1 at 2.  The initial police dispatch reported the

9    man had knives inside the apartment but was not armed with any, that he was inside the

10   apartment with his wife, and that he requested a mental health response.  *Id.*

11       Officers Wagner, Kim, and Caulfield were dispatched to the caller's address at

12   3028 1st Avenue, Apt. 404, Seattle, Washington.  Dkt. # 38-2 at 4, 11, 14.  Officer

13   Drummond self-initiated a response as well.  Dkt. # 38-3 at 3.  While en route, dispatch

14   provided frequent updates to the officers, including that the man stated he will be suicidal

15   if officers did not get inside, and that dispatch could hear frantic screaming and chaos in

16   the background.  Dkt. # 38-1 at 3–4.  In addition to the original call, multiple 911 callers

17   reported escalating disturbances, including that someone was being pushed out the

18   window, that a woman could be heard crying and calling for help, and that someone was

19   seen possibly assaulting a female in front of the window.  *Id.*

20       The caller's apartment building, located at 3028 1st Avenue, is adjoined to a

21   separate apartment building located at 3016 1st Avenue, where Plaintiff lived.  Dkt. # 37

22   at 4.   Together, these two apartment buildings completely occupy a triangular

23   intersection.  *Id.*  Officer Wagner was the first to arrive on the scene.  Dkt. # 38-2 at 4;

24   Dkt. #38-5 at 21:42:00–21:43:50.  He observed broken glass on one of the blocks of the

25   triangular intersection, and believing there was only one interconnected apartment

26

complex in the triangular intersection, he headed for a building entrance located at one of the corners of the intersection. *Id*. Officers Kim and Caulfield joined him. *Id.* Unfortunately, this was the entrance to the wrong building. The top right corner of the building entrance displayed the address number "3016," but the officers did not see this number. Dkt. # 47-8 at 2; Dkt. # 47-1 at 19–20; Dkt. 47-2 at 15. The officers did not take further steps to confirm they were entering the correct building, such as confirming the location with their acting sergeant or dispatch, or looking for an address number on the building before entering. Dkt. # 47-1 at 7–8; Dkt. # 47-2 at 5–6.

The officers took the stairs to Apartment 404, where they knocked, announced themselves, and warned that they would breach the door if it was not opened. *See* Dkt. # 38-5 at 21:43:50–45:20; Dkt. # 38-2 at 4, 11, 14. Plaintiff acknowledged the officers but did not open the door. *Id.* She testified she was traumatized and unable to move, and she was unsure if someone pretending to be the police was knocking. Dkt. #38-8 at 9–10. Hearing no response, Officer Caulfield kicked the door multiple times until it yielded to the force of his blows. Dkt. # 38-5 at 21:45:20–21:45:35. All officers entered with masks on. *Id.* Officer Wagner entered Plaintiff's apartment with his firearm in the "low ready" position, meaning it was angled towards the floor. Dkt. # 38-5 at 21:45:35–21:45:45. Officer Kim held a less-lethal weapon also in the "low ready" position. Dkt. # 38-11 at 21:45:40–21:45:55. Officer Caulfield entered with his firearm out in front of him. Dkt. # 38-10 at 21:45:35–21:46:00. The parties dispute whether Officer Caulfield pointed his weapon at Plaintiff. Based on the Court's review of footage from Officer Caulfield's body worn camera,[1] it appears Officer Caulfield turned to the opening of the kitchen, where Plaintiff was standing, with his gun still drawn, and the gun was

---

[1] When there is video evidence, courts "view the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

ORDER - 3

momentarily pointed in Plaintiff's direction before Officer Caulfield lowered his weapon. Dkt. # 38-10 at 21:45:35–21:46:00.   Officer Drummond joined the other officers as Officer Caulfield was breaching the door.  Dkt. # 38-9 at 21:45:15–21:45:45.  He did not have a weapon and only briefly entered the apartment for ten seconds without interacting with Plaintiff.  *Id.* at 21:45:45–21:46:00.

After realizing they were in the wrong apartment, Officer Kim escorted Plaintiff into the hallway and spoke with her. Dkt. # 37-11 at 21:46:00–21:47:25; Dkt. # 38-2 at 11.  Plaintiff was visibly sobbing and shaking.  *Id.*  Officers Caulfield and Wagner conducted a 45-second sweep of the apartment with their firearms in the low-ready position.  Dkt. # 38-5 at 24:45:50–21:46:45; Dkt. # 38-10 at 21:46:00–21:46:45; Dkt. # 38-2 at 4, 14.  The officers explained their mistake to Plaintiff and left to the correct location.  Dkt. # 38-5 at 21:46:40–21:47:25.  After securing the scene, Officers Kim, Caulfield, and another officer returned to apologize to Plaintiff and gave her instructions for filing a claim to repair her door. Dkt. # 38-13 at 22:08:10–22:26:55.  Plaintiff acknowledged that similar address confusion had occurred before with grocery deliveries.  *See id*. at 22:08:35–22:08:40.  Plaintiff claims she sustained psychological harm, including PTSD, as a result of this incident.  Dkt. # 46 at 12–14.  In support, Plaintiff provides the Court with the expert reports of Dr. Megan Carter and Dr. Andrew Saxon.  *See* Dkts. # 48–49.

Based on these events, Plaintiff alleges the following causes of action against the individual officers and the City of Seattle: (1) unconstitutional search in violation of the Fourth Amendment; (2) excessive force in violation of the Fourth Amendment; and (3) state law negligence.  Dkt. # 4 at 4–6.

### III.    MOTION TO EXCLUDE

Defendants move to exclude the testimony of Susan Peters, Plaintiff's police practices expert, because her expert report "lacks any meaningful analysis" and "fails to explain how her experience led to her opinion." Dkt. #41 at 1, 5.  For example, Defendants note that Ms. Peters "fails to identify or discuss any training, practices, policy, or procedure that officers allegedly violated," and does not "relate her opinion to training, policy, procedures, best practices, or even her own experience." *Id.* at 7–8.  In response, Plaintiff argues Ms. Peters's opinion is based on her review of the case materials and her experience in law enforcement. Dkt. # 44 at 5.  For the reasons stated below, the Court GRANTS Defendants' Motion to Exclude.

#### A.    Legal Standard

Under Federal Rule of Evidence 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Testimony by a qualified expert "is admissible pursuant to Rule 702 if it is both relevant and reliable." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).  The trial court's role is to act as a "gatekeeper" to ensure expert evidence meets these threshold requirements. *Id.*  In doing so, it has broad discretion to admit or exclude expert

1    evidence. *Burgess v. Premier Corp.*, 727 F.2d 826, 833 (9th Cir. 1984).  The proponent
2    of the expert bears the burden of proving admissibility. *Cooper*, 510 F.3d at 942.

3        Evidence is relevant if it "logically advance[s] a material aspect of the party's
4    case." *Id.*  More critical to this motion, evidence is reliable if it has "a reliable basis in
5    the knowledge and experience of the relevant discipline." *Estate of Barabin v.*
6    *AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014), *overruled on other grounds by*
7    *United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020).  In assessing reliability, the court
8    is concerned "'not [with] the correctness of the expert's conclusions but the soundness
9    of [the expert's] methodology.'" *Id.*  Importantly, "the court cannot conclude that a non-
10    scientific expert's proffered testimony is reliable unless the expert explains the manner
11    in which her knowledge and experience support her conclusions." *Johnson v. Kelly*, No.
12    C16-0635JLR, 2017 WL 1838140, at * 4 (W.D. Wash. May 8, 2017).  "If the [expert] is
13    relying solely or primarily on experience, then the [expert] must explain how that
14    experience leads to the conclusion reached, why that experience is a sufficient basis for
15    the opinion, and how that experience is reliably applied to the facts." *Id.* (quoting Fed.
16    R. Evid. 702 advisory committee's note to 2000 amendments).

17        Courts in this district have excluded expert opinions where the expert report fails
18    to connect the expert's conclusions to their specialized knowledge or experience.  *See*
19    *id.*, at *4–7 (excluding Sue Peters's testimony because her "expert report does not tie the
20    conclusions she makes therein to her experience in law enforcement"); *Avery v. City of*
21    *Seattle*, No. 2:22-cv-00560-LK, 2024 WL 2959541, at *6–7 (W.D. Wash. Jun. 12, 2024)
22    (excluding police expert including because expert report "conclude[ed] without
23    explanation" that action "'was not consistent with police training, practices, and
24    procedures,' without identifying any training, practices, or procedures that would counsel
25    different action.").

26

1

### B.    Admissibility of Ms. Peters's Expert Testimony

2      Ms. Peters's expert report does not satisfy the reliability requirement of Evidence

3   Rule 702 because it does not explain how her knowledge or experience supports her

4   stated opinions.  Ms. Peters's report appears to contain two opinions: (1) "Seattle Police

5   Department officers failed to take necessary investigative steps to verify they were at the

6   correct address of the in-progress crisis event"; and (2) the officers did not follow "basic

7   police practices of address verification."  Dkt.  #42-1 at 10.  She does not, however,

8   explain what constitutes "necessary investigative steps" based on her experience or

9   generally accepted practices.  Therefore, it is unclear how she arrived at her opinion that

10  the officers "failed to take necessary investigative steps." Similarly, Ms. Peters does not

11  explain what is required to satisfy "basic practices of address verification," and thus how

12  she arrived at her opinion that the officers did not follow these practices.

13       While Plaintiff claims Ms. Peters's opinion is based on her law enforcement

14  experience, the critical issue is that her report does not explain *how* this is the case.  For

15  example, it does not explain what Ms. Peters understands is standard practice based on

16  her work in law enforcement, and how the officers' actions compared to that standard.

17  A single statement in her report that her opinions "are based upon [her] training,

18  experience, and review of discovery material records," *id.*, is conclusory and fails to meet

19  the requirement of Evidence Rule 702.  Moreover, the Court is not persuaded by

20  Plaintiff's argument that Ms. Peters does not discuss how the officers' actions violated

21  policy because the Seattle Police Department has no relevant policy.  Dkt. # 44 at 6.  The

22  issue is not that Ms. Peters does not discuss relevant *Seattle Police Department* policy,

23  but that she does not analyze *any* relevant policy, training, or best practice.  As a result,

24  there is no support for her opinion that the officers "failed to take necessary investigative

25  steps" and failed to follow "basic police practices."

26

1    Because the Court finds that Ms. Peters's expert report does not meet the

2    reliability requirement of Evidence Rule 702, it declines to consider Defendants'

3    remaining arguments that Ms. Peters' opinion is not relevant, and that Ms. Peters lacks

4    specialized knowledge.

5             **IV.    MOTION FOR SUMMARY JUDGMENT**

6            In their Motion for summary Judgment, Defendants contend: (1) Acting Sergeant

7    Duus and Officer Drummond should be dismissed based on their lack of interaction with

8    Plaintiff; (2) there was no unreasonable search; (3) there was no unreasonable seizure;

9    (4) the individual officers are entitled to qualified immunity; (5) the City of Seattle cannot

10   be held liable under a *Monell* theory; and (6) Plaintiff fails to prove negligence.  Dkt. #

11   37.  For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART

12   Defendants' Motion for Summary Judgment.

13           **A.    Legal Standard**

14           Summary judgment is appropriate if the evidence, when viewed in the light most

15   favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

16   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

17   P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. City of L.A.*,

18   477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of

19   the case.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A factual dispute

20   is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for

21   the non-moving party."  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)

22   (citing *Liberty Lobby*, 477 U.S. at 248–49).

23           The moving party bears the initial burden of showing there is no genuine issue of

24   material fact and that he or she is entitled to prevail as a matter of law.  *See Celotex*, 477

25   U.S. at 323.  If the moving party does not bear the ultimate burden of persuasion at trial,

26

1    it can show the absence of an issue of material fact in two ways: (1) by producing

2    evidence negating an essential element of the nonmoving party's case, or (2) by showing

3    that the nonmoving party lacks evidence of an essential element of its claim or defense.

4    *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1106 (9th Cir. 2000).

5         Courts are "required to view the facts and draw reasonable inferences in the light

6    most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

7    Courts may not weigh evidence or make credibility determinations in analyzing a motion

8    for summary judgment because these are "jury functions, not those of a judge." *Liberty*

9    *Lobby*, 477 U.S. at 249–50. Nevertheless, the non-moving party "must do more than

10   simply show that there is some metaphysical doubt as to the material facts . . . . Where

11   the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

12   party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks

13   omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–

14   87 (1986)). "Conclusory allegations unsupported by factual data cannot defeat summary

15   judgment." *Rivera v. Nat'l R.R. Passenger Corp*., 331 F.3d 1074, 1078 (9th Cir. 2003).

16   Nor can a party "defeat summary judgment with allegations in the complaint, or with

17   unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc*.,

18   343 F.3d 1107, 1112 (9th Cir. 2003).

19       **B.    Acting Sergeant Duus and Officer Drummond**

20       The parties agree to dismiss Acting Sergeant Duus as a defendant because he was

21   not involved with the events giving rise to this action. Dkts. # 37 at 9; Dkt. # 46 at 2.

22       Defendants further seek dismissal of Officer Drummond. Dkt. # 37 at 9.

23   Defendants present evidence that Officer Drummond joined the other three officers as

24   Officer Caulfield began to breach Plaintiff's apartment door, that Officer Drummond

25

26

1    entered the apartment for only ten seconds, was unarmed, and did not interact with

2    Plaintiff. *Id.* Plaintiff's response brief does not address these arguments. *See* Dkt. # 46.

3         The Court finds claims against Officer Drummond should be dismissed. Under

4    Ninth Circuit law, "an official whose individual actions do not themselves rise to the

5    level of a constitutional violation may be held liable under section 1983 only if the official

6    is an integral participant in the unlawful act." *Peck v. Montoya*, 51 F.4th 877, 889 (9th

7    Cir. 2022) (quotes omitted). A defendant is an "integral participant" if "(1) the defendant

8    knew about and acquiesced in the constitutionally defective conduct as part of a common

9    plan with those whose conduct constituted the violation, or (2) the defendant sets in

10   motion a series of acts by others which the defendant knew or reasonably should have

11   known could cause others to inflict the constitutional injury." *Id.* at 891 (cleaned up).

12   Here, Officer Drummond is not an integral participant because he did not form a common

13   plan or set in motion acts that resulted in the other officers' mistaken entry into Plaintiff's

14   residence. Officer Drummond arrived on the scene separately from the other officers,

15   joined them as Officer Caulfield was breaching Plaintiff's door, and did not interact with

16   Plaintiff.

17         **C.    Fourth Amendment Claim – Unreasonable Search**

18         Defendants argue the officers' search of Plaintiff's residence was lawful because

19   it falls within the exigency or emergency exception to the general rule against warrantless

20   home searches, and the officers' mistake in entering the wrong building was reasonable.

21

22

23

24

25

26

ORDER - 10

1  Dkt. # 37 at 10–15.  Plaintiff argues the reasonableness of officers' actions is a question

2  for the jury.  Dkt. # 46 at 14–18.  The Court agrees with Plaintiff. [2]

3       The Fourth Amendment is not a guarantee against all searches and seizures, but

4  only against unreasonable searches and seizures.  *See United States v. Sharpe*, 470 U.S.

5  675, 682 (1985).  Warrantless searches of the home are "presumptively unreasonable."

6  *Payton v. New York*, 445 U.S. 573, 586 (1980).  To lawfully enter a home without a

7  warrant, there must be either probable cause and exigent circumstances, or an emergency

8  justifying the entry.  *United States v. Struckman*, 603 F.3d 731, 738 (9th Cir. 2010).  The

9  "factual matters underlying the judgment of reasonableness" are generally a "question

10 for the jury."  *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984).

11      In the context of a mistaken entry into the home, the constitutionality of the search

12 turns on whether the mistake was "objectively understandable and reasonable."

13 *Maryland v. Garrison*, 480 U.S. 79, 88 (1987); *see also Hartsfield v. Lemacks*, 50 F.3d

14 950, 955 (11th Cir. 1995) ("absent probable cause and exigent circumstances, a

15 warrantless search of a residence violates the Fourth Amendment, unless the officers

16 engage in reasonable efforts to avoid error."); *Alvarado v. City of Philadelphia*, 719 F.

17 Supp. 3d 420, 429 (E.D. Pa. 2024) ("Entering the wrong house on a valid warrant violates

18 the Fourth Amendment if the circumstances would alert a reasonable officer to 'the risk

19

20 _____

21 [2] Plaintiff also argues Defendants' exigency or emergency argument "has been
   effectively nullified by this court's recent Order on Plaintiff's Motion for Sanctions for
22 Spoliation of Evidence."  Dkt. # 46 at 10.  The Court rejects this argument. The Court's
   prior order clearly states it was issuing "a lesser sanction of a *permissive* jury instruction"
23 and will instruct the jury that "it *may* presume that the 911 recordings deleted, destroyed,
   or otherwise rendered inaccessible were unfavorable to the City."  Dkt. 43 at 8 (emphasis
24 added).  The Court's prior order does not mandate a negative inference, nor does it
25 preclude consideration of other non-spoliated evidence that can support an inference that
   the officers were responding to an emergency.
26

that they might be' in the wrong place." (quoting *Garrison*, 480 U.S. at 87)).  In assessing the constitutionality of a search, courts recognize "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Garrison*, 480 U.S. at 87.

Several cases illustrate the contours of the reasonableness analysis in the context of mistaken searches.  On the one hand, courts have found searches reasonable where law enforcement officers took steps to verify they were searching the correct address and there was no information available to put officers on notice of their mistake. In *Garrison*, police officers mistakenly obtained and executed a warrant covering the entire third floor of an apartment, not knowing the third floor was split into two units, one belonging to the suspect and another belonging to the plaintiff.  *Id.* at 80.  The officer who obtained the warrant concluded there was only one apartment on the third floor after conducting an investigation, "including a verification of information obtained from a reliable informant, an exterior examination of the three-story building [at issue], and an inquiry of the utility company." *Id.* At 81.  The Supreme Court held the officers' search was constitutional because the "objective facts available to the officers at the time suggested no distinction between [the suspect's] apartment and the third-floor premises." *Id.* at 88.

In *Nazarian*, the court held an officer did not unreasonably search plaintiff's apartment when, while responding to a potential emergency, the officer observed glass falling from a window, could not tell if it was coming from the second or third floor, and entered the wrong apartment unit. *Nazarian v. City of Beverly Hills*, No. 19-4391 DSF, 2020 WL 11027732, at *1–2, *4–5.  The court found, in part, that the officer's "estimate that the apartment was on the second or third floor of the building was reasonable under the circumstances." *Id.*, at *5.

On the other hand, courts have denied summary judgment where officers failed to take steps to confirm they were searching the right location and there was information available to put the officers on notice of their mistake.   In *Hartsfield*, a deputy sheriff obtained a warrant listing the correct address of a suspect, but when executing the warrant, erroneously entered a house further down on the same block.  *Hartsfield*, 50 F.3d at 951–52.  The Eleventh Circuit found the defendant's conduct was "not consistent with a reasonable effort to ascertain and identify the place intended to be searched."  *Id.* at 955 (quotes omitted).  The court gave great weight to the fact that "the numbers on the houses are clearly marked," "the raid took place during daylight hours," and "simply checking the warrant would have avoided the mistaken entry."  *Id.*  Moreover, the court noted that the defendant had been to the proper residence the day before, and there were distinguishing features between the correct house and the one defendant mistakenly entered.  *Id.*

In *Alvarado*, detectives obtained a warrant for the "2nd floor rear" of an apartment, but entered through the first floor front door, into plaintiff's apartment, under the mistaken belief that the door would lead to an interior common area housing doors to both apartment units.  *Alvarado*, 719 F. Supp. 3d at 425–26.  In ruling on defendants' motion for summary judgment, the court emphasized that its "inquiry concerns whether a juror could find [the defendants'] mistaken belief unreasonable in light of the circumstances known to the officers."  *Id.*, at *430.  The court found a reasonable jury could find in favor of plaintiff, including because the defendants "knew the warrant specified the building's '2nd floor rear' apartment but chose to breach the building's front door instead of the back door."  *Id.*[3]

---

[3] In their reply brief, Defendants argue *Alvarado* is distinguishable because the officers did not knock and announce, and engaged in egregious conduct after entering the wrong

1       Here, a reasonable jury could conclude the officers did not act reasonably to

2   confirm they were at the correct address before breaching Plaintiff's door. Critically, the

3   officers had access to the correct address, arrived during daylight hours, and the number

4   on Plaintiff's apartment building was marked. Dkt. # 38-1 at 2; Dkt. # 47-8 at 2. Yet

5   they did not confirm they were entering the right apartment building before proceeding

6   to Plaintiff's unit. Dkt. # 47-1 at 7–8; Dkt. # 47-2 at 5–6. This is similar to both *Hartsfield*

7   and *Alvarado*, where courts denied summary judgment in part because the officers had

8   access to address information that could have alerted them to their mistaken entry.

9   Moreover, taking all facts in the light most favorable to Plaintiff, when the officers

10  arrived at Plaintiff's unit and heard no disturbances consistent with the chaotic situation

11  reported by dispatch, they did not pause to confirm they were at the correct address. Dkt.

12  # 38-5 at 21:43:50–45:20. Unlike in *Garrison*, the officers did not conduct an

13  investigation to confirm their assumption that there was only one apartment building on

14  the block. Unlike in *Nazarian*, the officers could have confirmed the correct apartment

15  by checking the address, whereas the officer in *Nazarian* had to determine the correct

16  apartment unit based solely on her assessment of the source of the falling glass.

17      The Court is cognizant that reasonableness "must be judged from the perspective

18  of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and

19  includes "allowance for the fact that police officers are often forced to make split-second

20  judgments – in circumstances that are tense, uncertain, and rapidly evolving." *Graham*

21  *v. Connor*, 490 U.S. 386, 396–97 (1989). An officer's efforts to verify the correct

22  _____

23  apartment. Dkt. # 51 at 5. However, *Alvarado* held plaintiff's Fourth Amendment claim
    may proceed based on three separate theories: (1) the mistaken entry; (2) the failure to
24  knock and announce; and (3) detaining plaintiff after realizing their mistake. *Alvarado*,
    719 F. Supp. 3d at 425. The distinguishing facts cited by Defendants did not impact the
25  court's analysis as to liability based on the mistaken entry theory.

26

ORDER - 14

location is not unreasonable "simply because they lead to an error, or because more accurate means of ascertaining the property's identity were available." *White v. Mclain*, 648 Fed. App'x 838, 841 (11th Cir. 2016). Here, there are factors indicating the reasonableness of the officers' actions, including that they were responding to a potential emergency situation; Officer Wagner surveyed the area and observed glass in the road, leading to his conclusion he arrived at the correct building; and the positioning of the two adjoining buildings have led others to make the same mistake in the past. Dkt. # 38-1 at 2–4; Dkt. #38-5 at 21:42:00–21:43:50; Dkt. # 38-13 at 22:08:35–22:08:40. However, in light of the countervailing evidence described above, the reasonableness of the officers' actions is a question for the jury.

### D.    Fourth Amendment Claim – Unreasonable Seizure

Defendants next argue the officers did not unconstitutionally seize Plaintiff using excessive force because the officers never pointed a gun at her. Dkt. # 37 at 15–17. Plaintiff argues "the officers' actions in entering the wrong apartment and using force against Ms. Rehn were not justified under the Fourth Amendment." Dkt. # 46 at 19. The Court agrees with Plaintiff.

Claims that officers used excessive force "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quotes omitted). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each

1    particular case." *Id.* (cleaned up).  When an officer's use of force is based on a mistake

2    of fact, the relevant question is "whether a reasonable officer would have or *should* have

3    accurately perceived that fact." *Estate of Strickland v. Nevada County*, 69 F.4th 614, 621

4    (9th Cir. 2023) (emphasis in original).

5          As discussed above, a reasonable jury could conclude the officers' mistake in

6    entering the wrong apartment building was not reasonable.  Accordingly, a reasonable

7    jury could also find the officers' ensuing use of force based on that mistake—entering

8    Plaintiff's apartment with weapons out, and one officer momentarily pointing his gun in

9    Plaintiff's direction—when in fact Plaintiff posed no threat, was not reasonable.

10         **E.    Qualified Immunity**

11         Defendants argue that even if there was a constitutional violation, the officers are

12   entitled to qualified immunity because the unlawfulness of their conduct was not clearly

13   established at the time of the incident.  Dkt. #37 at 17–21.  Defendants' briefing largely

14   focuses on case law regarding the lawfulness of holding firearms in the "low ready"

15   position during a police encounter.  *Id.*  Plaintiff argues that clearly established law

16   prohibited the officers' warrantless entry into Plaintiff's home under the circumstances.

17   Dkt. # 46 at 20–46.  The Court agrees with Plaintiff.

18         "Qualified immunity is an entitlement not to stand trial or face the other burdens

19   of litigation, which, in certain circumstances, shields government officials from civil

20   liability for actions taken in the course of their duties." *Foster v. Runnels*, 554 F.3d 807,

21   812 (9th Cir. 2009) (quotes omitted).  Officers are entitled to qualified immunity unless

22   (1) the officers' conduct violated a constitutional right and (2) the right which was

23   violated was clearly established at the time of the violation.  *Saucier v. Katz*, 533 U.S.

24   194, 201 (2001).  A right is clearly established if "a reasonable official would understand

25   that what he is doing violates that right." *Id.* at 202.

26

1     It is a "basic principle of Fourth Amendment law" that "searches and seizures

2 inside a home without a warrant are presumptively unreasonable."  Payton, 445 U.S. at

3 586.  In 1987, the Supreme Court addressed in *Garrison* the contours of the Fourth

4 Amendment in the context of a mistaken entry into a home.  *Garrison*, 480 U.S. 79.

5 There, the Court found the officers' conduct was reasonable because it was "consistent

6 with a reasonable effort to ascertain and identify the place intended to be searched within

7 the meaning of the Fourth Amendment."  *Id.* at 88.  Subsequent courts addressing

8 qualified immunity for mistaken home entries have found that under *Garrison*, it is

9 clearly established law that "absent probable cause and exigent circumstances, a

10 warrantless search of a residence violates the Fourth Amendment, unless the officers

11 engage in reasonable efforts to avoid error."  *Hartsfield*, 50 F.3d at 955; *see also*

12 *Alvarado*, 719 F. Supp. 3d at 431 ("caselaw clearly put beyond debate that police officers

13 violate the Fourth Amendment if they mistakenly enter the wrong home pursuant to a

14 search [] warrant unless that mistake was 'objectively understandable and reasonable.'"

15 (quoting *Garrison*, 480 U.S. at 88)). In addition, it is clearly established law that "[w]here

16 an officer's particular use of force is based on a mistake of fact, we ask whether a

17 reasonable officer would have or *should* have accurately perceived that fact."  *Torres v.*

18 *City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) (emphasis in original).

19     As discussed, a reasonable jury could find that the officers violated Plaintiff's

20 Fourth Amendment rights by failing to take reasonable efforts to verify they were at the

21 correct address before breaching her door, and by using force based on that mistake.  At

22 the time of the incident, clearly established law prohibited these actions.  Accordingly,

23 Plaintiff's Fourth Amendment claims are not precluded by qualified immunity.

24

25

26

ORDER - 17

1    **F.    *Monell* Liability for Failure to Train**

2         Plaintiff asserts that the City of Seattle is subject to liability under *Monell* because

3    the Seattle Police Department's "lack of specific training or polices . . . regarding address

4    verification before entering a residence . . . establishes a deliberate indifference to the

5    constitutional rights of individuals" Dkt. # 46 at 20.  Defendants argue Plaintiff fails to

6    present facts "indicative of deficiencies in training" or facts "capable of establishing

7    deliberate indifference" which typically require a pattern of violations, systematic

8    supervisory or disciplinary problems.  Dkt. # 37 at 22.

9         The Ninth Circuit uses a two-part test for *Monell* claims.  First, a court asks

10   whether a constitutional violation occurred; then, it asks whether the "city's policy caused

11   the constitutional wrong."  *Lowry v. City of San Diego*, 858 F.3d 1248, 1255 (9th Cir.

12   2017). For purposes of the second prong, causation means the city's policy had the

13   "'moving force' behind the constitutional violation." *Chew v. Gates*, 27 F.3d 1432, 1444

14   (9th Cir. 1994) (citing *Monell*, 436 U.S. at 694).  *Monell* claims are successful in only

15   "limited circumstances," where officers "so often violate constitutional rights that the

16   need for further training must have been plainly obvious to the city policy makers, who,

17   nevertheless, are 'deliberately indifferent' to the need." *Bd. of the Cnty. Comm'rs. of*

18   *Byran Cnty., Oklahoma v. Brown*, 520 U.S. 397, 407 (1997).

19        Plaintiff's *Monell* claim fails for multiple reasons. There is no evidence that

20   different training was likely to change the result of the individual officers' search.  *See*

21   *Barajas v. City of Rohnert Park*, 159 F. Supp. 3d 1016, 1042 (N.D. Cal. 2016) (granting

22   summary judgment on the *Monell* claims in part because of the "absence of evidence

23   showing the likelihood that different training would have changed the search in this

24   case[.]").  Moreover, Plaintiff has not shown that the City of Seattle exhibited "deliberate

25   indifference to the rights of persons with whom the police come into contact." *City of*

26

1    *Canton v. Harris*, 489 U.S. 378, 388 (1989).  Plaintiff also has not pointed to a "pattern

2    of constitutional violations," which is "ordinarily necessary to demonstrate deliberate

3    indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62

4    (2011) (quotes omitted).  Plaintiff has not shown, for example, that any shortcoming in

5    the City of Seattle's training routinely led to constitutional violations, or that the City's

6    officers regularly use such tactics.  Nor have they shown that any purported deficiencies

7    in the City's training program were so "patently obvious that a city could be liable under

8    § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64.  Ultimately,

9    establishing municipal liability—particularly on a failure to train theory—poses a very

10   high bar.  *See Connick*, 563 U.S. at 61 (noting that the deliberate indifference standard

11   creates a "stringent standard").  Plaintiff has not cleared that high bar here.

12        **G.    Negligence**

13             **1.    Breach, Injury, Causation**

14        Defendants do not contest that the individual officers owed a duty to Plaintiff, but

15   argues Plaintiff's state negligence claim should be dismissed because Plaintiff cannot

16   establish (1) the officers breached a duty of care by entering her apartment; (2) Plaintiff

17   suffered harm; and (3) the officers' actions caused the harm alleged.  Dkt. # 37 at 22–25.

18   Plaintiff argues "[t]he actions of the officers in breaching Ms. Rehn's apartment door,

19   entering without a warrant, and using force with weapons drawn, fall below the standard

20   of care expected in the performance of their duties" and point to Plaintiff's experts'

21   reports to demonstrate causation and harm.  Dkt. # 46 at 23.  The Court finds summary

22   judgment is inappropriate on this claim.

23        Under Washington law, a plaintiff asserting a negligence claim must show "(1)

24   the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and

25   (4) the breach as the proximate cause of the injury." *Wuthrich v. King County*, 366 P.3d

26

926, 929 (Wash. 2016).  For the reasons discussed above, a reasonable jury could find the individual officers breached their duty of reasonable care to Plaintiff by failing to take appropriate measures to verify they were entering the correct building before breaching her door and entering with weapons out.  In addition, Plaintiff produced evidence that she suffered an injury and that the officers' actions proximately caused her injury. Plaintiff produces two expert reports detailing Plaintiff's psychological harm, including PTSD, developed as a result of the incident.  Dkt. #48, Dkt. # 49.

Defendants argue that under Washington law, claims for emotional distress without physical injury may proceed "only where emotional distress is (1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifested by objective symptomatology." *Bylsma v. Burger King Corp.*, 293 P.3d 1168, 1170 (Wash. 2013).  The court has little trouble in finding a reasonable jury could conclude these requirements are met.  It is foreseeable that four police officers mistakenly knocking down Plaintiff's door, entering with weapons, with one officer momentarily pointing his gun in her direction, could result in emotional distress; the reaction is reasonable under the circumstances; and Plaintiff has introduced evidence of her objective symptomatology through her experts.  In addition, Defendants question the causal link between the incident and Plaintiff's diagnosis, including because Plaintiff was assessed by mental health providers specially for the purpose of this lawsuit, and her father passed away in the intervening years.  Dkt. # 37 at 25.  However, these arguments present issues of fact for the jury.

### 2.    Assumption of Risk

Next, Defendants argue Plaintiff's negligence claim is barred by the "assumption of risk" doctrine because Plaintiff "chose not to open the door and by doing so, assumed the risk that officers would breach the door.  Dkt. #37 at 25–26.  The Court rejects this

1    argument. "[N]othing requires an individual to answer the door in response to a police
2    officer's knocking." *Hopkins v. Bonvicino*, 573 F.3d 752, 765 (9th Cir. 2009). Plaintiff's
3    failure to answer the door, when she had no obligation to do so, does not preclude her
4    from bringing a negligence claim against Defendants.

5                    **3.    Negligent Training and Supervision**

6         Defendants seek dismissal of Plaintiff's claim against the City of Seattle for
7    negligent hiring, training, and supervision. Under Washington law, a cause of action for
8    negligent supervision applies when "the employee acted *outside* the scope of his or her
9    employment," while a cause of action for vicarious liability applies "when an employee
10   commits negligence within the scope of employment." *LaPlant v. Snohomish County*,
11   271 P.3d 254, 256–57 (Wash. Ct. App. 2011) (emphasis in original). Thus, "a claim for
12   negligent hiring, training, and supervision is generally improper when the employer
13   concedes the employee's actions occurred within the course and scope of employment."
14   *Id.* at 257.

15        It appears Plaintiff's claim for negligence against the City of Seattle is premised
16   on both a negligent hiring, training, and supervision theory and a vicarious liability
17   theory. *See* Dkt. # 4 at ¶ 6.2 ("The City of Seattle had a duty to take care in the training
18   and supervision of its officers to prevent unnecessary and unjustified violent intrusions
19   into person's homes"); *id.* at ¶ 6.4 ("As a result, Defendant City of Seattle is liable for
20   negligence due to the actions of the Seattle police officers under respondeat superior.").
21   The Court agrees with Defendants that Plaintiff is precluded from asserting a negligent
22   hiring, training, and supervision theory against the City of Seattle because there is no
23   claim that the individual officers acted outside the scope of their employment.
24   Defendants do not seek dismissal of Plaintiff's negligence claim against the City of
25   Seattle under the *respondeat superior* theory, so the claim may proceed on that basis.

26

### 4.    State Qualified Immunity

Finally, Defendants argue they are entitled to state qualified immunity.  Dkt # 37 at 26–27.  In a negligence action, an officer is entitled to qualified immunity when the officer (1) was carrying out a statutory duty, (2) according to procedures dictated to him by statute and superiors, and (3) acted reasonably.  *McKinney v. City of Tukwila*, 13 P.3d 631, 640 (Wash. Ct. App. 2000).  For the reasons discussed above, the Court finds whether the individual officers acted reasonably is a question for the jury.  Therefore, Defendants are not entitled to state qualified immunity at this stage.[4]

//

//

//

//

//

//

//

//

//

//

//

---

[4] In their reply brief, Defendants argue for the first time that Plaintiff "may not base claims of negligence on alleged intentional actions, such as excessive force or unlawful arrest." Dkt. # 51 at 14.  The Court declines to consider this argument.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

1

## V.    CONCLUSION

2    For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

3 Defendants' Motion for Summary Judgment as follows:

4    (1) the Court **GRANTS** Defendants' motion for summary judgment as to claims

5        against Acting Sergeant Duus and Officer Drummond and **DISMISSES** them

6        from this case;

7    (2) the Court **GRANTS** Defendants' motion for summary judgment as to *Monell*

8        liability against the City of Seattle and **DISMISSES** the first and second

9        causes of action against Defendant City of Seattle;

10    (3) the Court **DENIES** Defendants' motion for summary judgment on Plaintiff's

11        Fourth Amendment claims against the remaining individual officers; and

12    (4) the Court **DENIES** Defendants motion for summary judgment on Plaintiff's

13        negligence claim against all remaining Defendants.

14    In addition, for the forgoing reasons, the Court **GRANTS** Defendants' Motion to

15 Exclude the Opinion of Sue Peters and **EXCLUDES** Ms. Peters's testimony at trial.

16

17    Dated this 1st day of July, 2025.

18

19

20    The Honorable Richard A. Jones
        United States District Judge

21

22

23

24

25

26